IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHN I. SHAFFRAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 04-0285-CV-W-SWH |
| LUCENT TECHNOLOGIES, INC., | ) |
| Defendant. | ) |

ORDER

Pending before the Court is defendant Lucent Technologies' Motion to Remand to ERISA Plan Administrator, and to Stay Further Proceedings Pending Completion of Administrative Review (doc. #33). Defendant maintains that the plaintiff has failed to exhaust his administrative remedies under the Plan because plaintiff failed to file an appeal with the Employee Benefits Committee when his initial claim of September 19, 2004 was considered denied after the Savings Plan Administrator failed to respond. (Defendant Lucent Technologies, Inc's Suggestions in Support of Its Motion to Remand to ERISA Plan Administrator, and to Stay Further Proceedings Pending Completion of Administrative Review (doc. #34) hereinafter "Lucent's Suggestions" at 3)

Plaintiff contends that a remand would serve no useful purpose because both Lucent's Plan Administrator and the Employee Benefits Committee have been fully informed of the details of plaintiff's claim and have either denied plaintiff's claim or failed to respond. (Plaintiff Shaffran's Suggestions in Opposition to Defendant Lucent's Motion to Remand to Plan Administrator and Stay Further Proceedings (doc. # 35) at 2)

I. PROCEDURAL HISTORY

Plaintiff was a participant in the Lucent Technologies, Inc. Long Term Savings and Security Plan (hereinafter "the Plan") which is an employee-benefit plan subject to the provisions of ERISA. Lucent is the Plan Administrator. (Lucent's Suggestions at 1) Plaintiff filed this lawsuit contending

that Lucent ignored and failed to implement his investment instructions.[1] (First Amended Complaint at ¶ 16)

Section 11.6 of the Plan sets forth the following:

**11.6 Claims Procedure**

**(a) Initial Claim Determination**

Claims by a Participant or Beneficiary shall be presented in writing to the Savings Plan Administrator. The Savings Plan Administrator shall review the claim and determine whether the claim should be approved or denied. In the event the claim is denied (in whole or in part), the Savings Plan Administrator shall notify the Participant or Beneficiary in writing of such denial within 90 days after receipt of the claim. The letter of denial shall set forth the following information:

(i) the specific reason or reasons for the denial;

(ii) specific reference to pertinent Plan provisions on which the denial is based;

(iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) an explanation that a full and fair review by the Committee of the decision denying the claim may be requested by the claimant or his or her authorized representative by filing with the Committee, within 60 days after such notice has been received, a written request for such review; and

(v) an explanation that if such request is so filed, the claimant or his or her authorized representative may review pertinent documents and submit issues and comments in writing within the same 60 day period specified in Section 11.5(a)(iv) above.

If the Plan Participant receives no response from the Savings Plan Administrator the claim is considered denied.

On or about July 27, 2000, plaintiff initiated a transfer of funds in his Plan account by requesting that $100,644.35 be transferred from the Stable Value Fund to the Employer's Share

---

[1] While the First Amended Complaint stated that Fidelity Investments ignored and failed to implement plaintiff's investment instructions, the Court dismissed Fidelity Investments finding that it acted merely as a servicing agent for Lucent, the plan administrator.

Fund II.² (First Amended Complaint at ¶ 7) Thereafter, in August, one of Fidelity's representatives advised plaintiff that the transfer of funds from the Stable Value Fund to the Employer's Share Fund II was improper. Plaintiff asked that the funds be returned to the Stable Value Fund. Instead, plaintiff claims that, over his objection, the money was transferred to the Lucent Stock Fund. (First Amended Complaint at ¶¶ 8 and 10)

Plaintiff indicates that he received letters dated September 26, 2000 and October 11, 2000, from Fidelity Investments. The first letter carried a signature line of "The Lucent Savings Plan Service Center." The second is signed by Heather Fitzgibbons, Senior Client Services Specialist. The letters explained that under the terms of the Plan, only company matching contributions could be held in the Employer's Share Fund II. (See Affidavit of Plaintiff John I. Shaffran at Exs. A and B) Thereafter, the plaintiff contacted U.S. Senator Jean Carnahan who in turn forwarded plaintiff's concerns about three separate issues to the Department of Labor. One of the three issues involved the movement of plaintiff's monies into the Lucent Stock Fund. The Regional Director of the Department of Labor responded to Senator Carnahan on December 4, 2001 and January 28, 2002. These letters were then forwarded by Senator Carnahan to plaintiff. (See Affidavit of Plaintiff John I. Shaffran at Exs. C and D)

Apparently because of the correspondence from the Department of Labor, Ingrid Orav, Savings Plan Administrator for Lucent Technologies, wrote to plaintiff on February 20, 2002.³ Ms. Orav explained that she was able to respond to only one of the three issues raised by the Department

---

²The Court has referred to the fund using the terminology contained in plaintiff's First Amended Complaint. However, the exact title of the fund remains unclear. For example, the initial correspondence from the Lucent Savings Plan Service Center refers to the Employer Shares Fund I and/or the Employer Shares Fund II as well as the Employer Shares Fund(s). (See Affidavit of Plaintiff John I. Shaffran at Ex. A) The next correspondence from Fidelity Investments refers to the Employee Shares Fund II. (See Affidavit of Plaintiff John I Shaffran at Ex. B) The Savings Plan Administrator refers to the Employer Shares Fund. The Court assumes the various references are to the same fund.

³The Court believes the date typed on the letter, February 20, 2001, was a typographical error. (See Affidavit of Plaintiff John I. Shaffran at Ex. E)

3

of Labor's correspondence, as the other issues were not within her area of responsibility. With respect to the July stock transaction, Ms. Orav explained:

> On July 27, 2000 you exchanged funds into the Employer Shares Fund of the LTSSP. The LTSSP does not allow for exchanges into the Employer Shares Fund. On September 26, 2000 you were sent a communication from the Lucent Savings Plan Service Center explaining that this fund is only for incoming company contributions; monies can be transferred out of, but not into, this fund. The Employer Shares Fund is composed of Lucent stock. When it was discovered that you were erroneously permitted to transfer money into this fund, you were informed that the money had been moved into the Lucent Stock Fund, which is also composed of Lucent stock. There was no financial loss since the monies were transferred to a fund holding the exact same investment. You were never informed that your monies would be returned to the investment fund from which they were transferred.

(Affidavit of Plaintiff John I. Shaffran at Ex. E)

On February 9, 2004, Fidelity Investments, through Glenn Bernard, Senior Customer Research and Resolution Specialist, wrote to say that there was no adjustment due on the Plan account and, therefore, the investigation was closed. (Affidavit of Plaintiff John I. Shaffran at Ex. H)

By letter dated September 19, 2004, addressed to the Employee Benefits Committee and to the Savings Plan Administrator, plaintiff wrote in part that:

> The following are claim/appeals for individual items listed below. I believe the claims process was appropriately follow VIA certified letters about July 2002. The purpose of this letter is to document that claim/appeal steps identified by the Summary Plan Description and ERISA regulation are complied with therein allowing further pursuit if required.

(Affidavit of Plaintiff John I. Shaffran at Ex. E) Attached to the 2004 correspondence is a letter dated July 20, 2002, directed to the Employee Benefits Committee and to Fidelity Management Trust Company "Re: Request Case Review and Corrective Action."

## II. DISCUSSION

If the July 2002 letter, even though not directed to the Savings Plan Administrator, is treated as the initial demand and the September 2004 letter, an appeal, then the appeal would have been untimely filed. If the September 2004 letter is treated as the initial claim, then no appeal was ever filed. Plaintiff contends that the September 19, 2004 letter was either a final appeal to Lucent, a

4

second appeal or an appeal following the submission of his July 2002 correspondence to the defendants. (Plaintiff's Suggestions in Opposition at 5) In its motion to remand, Lucent takes the following position:

> Although Plaintiff did file an initial claim with Lucent, he never filed an appeal. Plaintiff's claim letter is dated September 19, 2004, and was received by Lucent on October 1, 2004. *See* Faiello Aff. ¶ 11. The Lucent employee to whom the claim was assigned subsequently went on maternity leave, and during the leave Lucent failed to process Plaintiff's claim. *Id.* ¶ 12. This failure to respond was entirely inadvertent, *id.* ¶13, and should not be taken as an indication of bad faith or of any commentary on the merits of Plaintiff's claim. Plaintiff's initial claim is considered denied as of December 30, 2004, the end of the initial 90-day period. *Id.* ¶ 14.

(Lucent's Suggestions at 3) Defendant argues that if plaintiff persists in requesting that the February 2002 letter from the Savings Plan Administrator be treated as the denial of a valid claim, then Lucent would have no choice but to assert that plaintiff is precluded from obtaining judicial review of his claim because of his failure to file an appeal. (Lucent's Reply Suggestions (doc. #38) at 5) However, defendant urges the Court to remand for a decision on plaintiff's initial claim at the administrative level.

Plaintiff urges the Court to conclude that because Lucent never advised plaintiff of the technical appeal procedures to be followed, plaintiff cannot be required to comply with the technical appeal procedures of the Plan. (See Plaintiff's Suggestions in Opposition at 5-6, citing Back v. Danka Corp., 335 F.3d 790, 793 (8th Cir. 2003), and Conley v. Pitney Bowes, 34 F.3d 714 (8th Cir. 1994)) Relying on Seman v. FMC Corp. Retirement Plan, 334 F.3d 728 (9th Cir. 2003), defendant counters that because it never issued a decision, there is nothing for the Court to review, and the case must be remanded in order to give the defendant an opportunity to render a decision.

Prior to September 19, 2004, plaintiff had failed to address his initial claim to the Plan Administrator as required by section 11.6 of the Plan. Asking a member of Congress to contact the Department of Labor who in turn contacted the Plan Administrator does not put the Plan Administrator on notice that a claim is being filed in accordance with the review procedures. Thus, the Court is of the view that the February 2002 letter from the Plan Administrator is not a denial of

a claim within the meaning of section 11.6(a) of the Plan.

However, plaintiff filed a claim with the Savings Plan Administrator in September of 2004. There is no time requirement in section 11.6 for filing the initial claim nor has defendant raised an issue concerning the timeliness of this claim. Thus, the Court finds this claim to be in compliance with plaintiff's obligations under the claim procedures of the Plan. In view of the prior correspondence between the parties concerning this issue, the Court has evaluated whether it should ignore the defendant's failure to respond to the September 19, 2004 letter sent by plaintiff as well as plaintiff's failure to appeal the denial[4] and proceed directly to the review which plaintiff is requesting.

As part of this evaluation, the Court has considered the eight reasons discussed by the Eighth Circuit in Conley v. Pitney Bowes, 34 F.3d 714 (8th Cir. 1994), for requiring exhaustion of administrative remedies. While many of the rationale such as minimizing cost, promoting consistent treatment and providing a non-adversarial method of claims settlement are applicable in this case, of most significance is the fact that requiring the exhaustion of administrative remedies is helpful in ensuring that a factual record is assembled which will assist the Court in reviewing the fiduciary's actions. Id. at 718. In this case, although there has been correspondence between the Department of Labor and Senator Carnahan's office and the servicing agent and plaintiff, there is no formal record of which the Court is aware. The only letter from the Savings Plan Administrator was in response to a letter from Senator Carnahan directed to the Department of Labor that may or may not have set forth plaintiff's complete position and the remedy he was seeking. In fact, the Court views the Saving Plan Administrator's letter of February 2002 as informational, explaining to plaintiff why

---

[4] Although section 11.6(a) states that "[t]he letter of denial shall set forth the following information" (emphasis added), section 11.6(c) allows for an appeal if the claim is denied or if no reply is received after 90 days. Defendant does not appear to argue that plaintiff is barred from having his claim considered because of his failure to appeal after the Savings Plan Administrator failed to respond to his claim within 90 days. Moreover, in light of the mandatory language of section 11.6(a) of the Plan, the Court would not find that plaintiff is barred from proceeding by his failure to file an appeal where the Savings Plan Administrator has failed to respond and advise the claimant of his appeal rights as required by section 11.6(a) of the Plan.

the funds were not placed in the Employer's Share Fund.  Thus, the Court does not believe it would create an adequate record for review.

The only letter which made a claim, the correspondence of September 19, 2004, was not responded to by the Savings Plan Administrator or the Employee Benefits Committee.  Thus, the Court has no record on which to review the fiduciary's actions.

### III.  CONCLUSION

For the reasons discussed herein, the Court is granting defendant's motion to remand.  On remand, the Savings Plan Administrator should consider plaintiff's claim as set forth in the September 19, 2004 letter.  However, for purposes of compliance with section 11.6 of the Plan, the parties may treat the date of this Order as the date on which the claim was submitted.  The Savings Plan Administrator should make every effort to respond promptly, but in any event within 90 days from the date of this Order.  If the claim is denied, the denial letter should comply with section 11.6 of the Plan.  Any appeal to the Employee Benefits Committee must be made in the manner and in the time set forth in the Plan.

Given the foregoing, it is

ORDERED that defendant Lucent Technologies' Motion to Remand to ERISA Plan Administrator, and to Stay Further Proceedings Pending Completion of Administrative Review (doc. #33) is granted, and this case is remanded to allow the parties an opportunity to comply with section 11.6 of the Plan.  This case is stayed pending completion of the administrative review.  The parties are directed to provide a joint status report to the Court in 90 days outlining the progress of the administrative process.  Once the administrative review process has been completed, the parties should schedule a conference with the Court.  To the extent any issues remain for this Court's review, the parties can expect an expedited schedule.

                                          */s/ Sarah W. Hays*
                                             SARAH W. HAYS
                             UNITED STATES MAGISTRATE JUDGE